FILED
IN CLERKS OFFICE
2026 AUG 18 P 2:58
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SUSAN HASSAN,

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,

Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT

1. Plaintiff Susan Hassan is a Massachusetts consumer in the middle of a deliberate, documented effort to rebuild her credit. Her Equifax file shows that effort on its face: a small monthly credit-builder account with Kikoff Lending, LLC that she has paid exactly as agreed since June 2025; a one-hundred-dollar secured credit card with Lead Bank that she has paid as agreed since July 2025; and two completed credit-builder accounts with Ava Financial Inc, both paid and closed in good standing.

2. On January 10, 2026, Plaintiff requested and received from Defendant Equifax Information Services, LLC a disclosure of her consumer file. Equifax generated the disclosure that same day under Confirmation Number 6010552206 and delivered an eighteen-page document. A true and complete copy is attached as Exhibit A.

3. The disclosure Equifax delivered does not clearly and accurately reveal what is in Plaintiff's file. It reports two different dates of last payment for the same Bank of America account within a single table. It reports account balances "as of" dates for which the disclosure displays no monthly data at all. It presents a five-hundred-ten-dollar collection tradeline furnished by LVNV Funding LLC, an account Equifax itself types as a "Debt Buyer Account,"

without ever identifying the original creditor from whom the debt originated. And across eight tradelines it leaves core fields empty or marked only with Equifax's "No Data Available" symbol while whole months vanish from the account histories Equifax says it reviewed.

4. These deficiencies are not gaps in Equifax's knowledge. Equifax's own disclosure proves that Equifax possesses the very data it withheld: the document reports current balances that could only be computed from monthly data the disclosure does not display, states counts of months "reviewed" that exceed the months shown, and, in its Collections section, demonstrates that Equifax maintains and can display original-creditor names, naming "PROGRESSIVE" and "NATIONAL GRID" as original creditors for two other collection accounts while disclosing no original creditor for the LVNV debt-buyer account.

5. Section 1681g(a)(1) of the Fair Credit Reporting Act required Equifax, upon Plaintiff's request, to clearly and accurately disclose all information in her file. Equifax did not. Plaintiff brings this action for willful noncompliance under 15 U.S.C. § 1681n and, in the alternative, negligent noncompliance under 15 U.S.C. § 1681o.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA").

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendant transacts business in this District, and a substantial part of the events giving rise to the claims, including Defendant's delivery of the deficient file disclosure to Plaintiff in Somerville, Massachusetts, occurred in this District.

8. This action is timely. Plaintiff discovered the violations alleged herein upon receipt of the January 10, 2026 disclosure, well within the limitations period of 15 U.S.C. § 1681p.

## PARTIES

9. Plaintiff Susan Hassan is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). She resides in Somerville, Middlesex County, Massachusetts.

10. Defendant Equifax Information Services, LLC ("Equifax" or "Defendant") is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages, for monetary fees, in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, uses interstate commerce to prepare and furnish those reports, and does business throughout the United States, including in Massachusetts. Its corporate address is set out below:

| **Defendant** | **Corporate Address** |
|---|---|
| Equifax Information Services, LLC | 1550 Peachtree Street NW, Atlanta, Georgia 30309 |

11. At all relevant times Equifax acted through its agents, employees, and automated systems, including its dispute-processing, file-maintenance, and disclosure-generation systems.

## FACTUAL ALLEGATIONS

### A. The January 10, 2026 File Disclosure

12. On January 10, 2026, Plaintiff requested her consumer file from Equifax, and Equifax generated and delivered a file disclosure bearing the date "January 10, 2026" and "Confirmation # 6010552206." Exhibit A.

13. The disclosure spans eighteen pages and reports nine credit-account tradelines, two collection accounts, no public records, and no hard inquiries. Every inquiry listed on the disclosure is designated "Soft."

14. The disclosure's own legend defines a small square symbol as meaning "No Data Available." Throughout the disclosure, fields and table cells identified below display either no value at all or only that "No Data Available" marker. In either form, the underlying information is not disclosed to the consumer.

**B. Plaintiff Requested Her File, and the File Is Broader Than a Report**

15. Plaintiff requested her "file" within the meaning of 15 U.S.C. § 1681g(a)(1), which commands that a consumer reporting agency "shall" disclose to the consumer, upon request, "all information in the consumer's file at the time of the request."

16. The FCRA defines "file," at 15 U.S.C. § 1681a(g), as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." Congress used the term "consumer file" in § 1681g, not "consumer report," and the two terms are not interchangeable; reading "file" to mean only what appears on a consumer report would render the statute's separate definitions redundant. Nunnally v. Equifax Info. Servs., Inc., 451 F.3d 768, 773 (11th Cir. 2006).

17. The information omitted from Plaintiff's disclosure, including monthly balance and payment data, dates of activity and payment, and the identity of the original creditor on a debt-buyer collection account, is information furnished to Equifax by creditors and of the kind that appears in the consumer report products Equifax sells to its subscribers. It is not mere internal record-keeping or audit-trail data, which distinguishes this case, on its own terms, from Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007). The court of appeals in Cortez v.

Trans Union, LLC, 617 F.3d 688, 712 (3d Cir. 2010), likewise confirmed that the § 1681g file disclosure obligation reaches all information in the consumer's file, not a subset the agency selects.

**C. Equifax Possesses the Information It Did Not Disclose**

18. Equifax's possession of the undisclosed information is evident from the face of its own disclosure, in at least four independent ways.

19. First, the disclosure contradicts itself, and two different values for the same fact within one document prove the underlying data exists and was misreported or withheld. For the Bank of America account ending 7128, the "24 Month History" table states a "Last Payment Date" of "07/29/2022" in eight rows (the rows for 11/25, 10/25, 09/25, 08/25, 07/25, 06/25, 05/25, and 03/25) and a "Last Payment Date" of "07/01/2022" in five rows (the rows for 04/25, 12/24, 08/24, 03/24, and 01/24) of the same table, while the account header states "Date of Last Payment: 07/29/2022." A single closed account has one date of last payment; Equifax reported two.

20. Second, the disclosure repeatedly reports account balances "as of" dates for which it displays no data, which is possible only if Equifax holds monthly data it did not disclose. For the LVNV Funding LLC account ending 3179, the header states "Date Reported: 01/06/2026" and "Balance: $510," yet the account's history contains no January 2026 entry. For the Kikoff Lending, LLC account ending N77R, the header states "Date Reported: 12/31/2025," "Balance: $100," "Date of Last Activity: 12/31/2025," and "Date of Last Payment: 12/15/2025," yet the most recent row of the "24 Month History" table is "11/25" with a balance of "$120," and no December 2025 row appears. For the Lead Bank account ending 9558, the header states "Date Reported: 12/21/2025," "Balance: $85," "Date of Last Activity: 12/21/2025," and "Date of Last

Payment: 12/15/2025," yet the most recent row displayed is "11/25" with a balance of "$22." For each of the two Central Research Inc education loans (accounts ending 6569 and 6669), the header states "Date Reported: 11/30/2025" with balances of "$1,825" and "$4,229" respectively, yet the most recent rows displayed are "10/25" with balances of "$1,819" and "$4,209." Equifax cannot report a January 6, 2026 balance, a December 31, 2025 balance, or a November 30, 2025 balance without possessing the corresponding monthly data.

21. Third, the disclosure's stated review counts exceed the months actually shown. Equifax states "Months Reviewed: 50" for the Bank of America account while displaying thirteen monthly rows; "Months Reviewed: 33" for each Central Research account while displaying eighteen rows; "Months Reviewed: 14" for the Ava Financial account ending 2BM6 while displaying three rows; and "Months Reviewed: 11" for the Ava Financial account ending GM6H while displaying no "24 Month History" table at all. Equifax cannot review months whose data it does not possess.

22. Fourth, the disclosure proves Equifax maintains, and can display, the very categories it left blank. In its Collections section, Equifax discloses "Original Creditor: PROGRESSIVE" for the Credit Collections account and "Original Creditor: NATIONAL GRID" for the ACS account. Yet for the LVNV Funding LLC tradeline, which Equifax itself types as a "Debt Buyer Account," the disclosure identifies no original creditor anywhere, even though Equifax simultaneously reports a "Date of 1st Delinquency: 11/08/2022," a delinquency that necessarily occurred on an account held by the original creditor years before LVNV's reported opening date of "08/29/2025."

23. On information and belief, the furnishers of the accounts described herein reported to Equifax, on a monthly basis and in the industry-standard Metro 2 format, the data

categories the disclosure leaves blank, including actual payment amounts, scheduled payment amounts, dates of last payment, and monthly balances, and debt buyers such as LVNV Funding LLC reported original-creditor information in the K1 segment, which industry reporting standards require of debt buyers each time an account is reported. Plaintiff cites these industry reporting standards solely as factual support for the allegation, on information and belief, that the furnishers reported this data to Defendant, not as an independent basis for liability.

24. On information and belief, Equifax sells to its subscribers consumer report products that contain the very categories of information, including payment histories, payment amounts, and original-creditor identification, that are blank or missing on the disclosure Equifax delivered to Plaintiff.

25. Whether the omitted and internally conflicting fields identified in this Complaint reflect furnisher non-reporting, as Defendant will presumably contend, or Equifax's maintenance and withholding of the data, as Plaintiff alleges, is ascertainable only from Equifax's own systems and from the consumer report products Equifax generates for its subscribers, and Plaintiff will seek that data in discovery.

**D. The Deficiencies, Account by Account**

26. LVNV Funding LLC, account ending 3179. Equifax reports this tradeline as "LVNV FUNDING LLC - Closed," a "Debt Buyer Account" with a "Balance: $510," an "Amount Past Due: $510," a "Date Opened: 08/29/2025," a "Date of 1st Delinquency: 11/08/2022," and a "Date Major Delinquency 1st Reported: 11/04/2025." The following fields display no value: "Status," "Date of Last Activity," "Date Closed" (although the tradeline is captioned "Closed"), "Credit Limit," "Terms Frequency," and "Activity Designator." No original creditor is identified anywhere for this debt-buyer account. In the "24 Month History" table, both

displayed rows (12/25 and 11/25) show no value in the "Scheduled Payment Amount," "Actual Payment Amount," "Last Payment Date," and "Credit Limit" columns, and no January 2026 row appears despite the header's "Date Reported: 01/06/2026."

27. Without the original creditor's identity, Plaintiff cannot determine what debt LVNV claims to have purchased, cannot cross-reference the account against her own records, and cannot meaningfully evaluate a five-hundred-ten-dollar derogatory item that Equifax dates to a delinquency in November 2022.

28. Bank of America, account ending 7128. Equifax reports this account as "Charge Off" with a "Balance: $2,032," a "Charge Off Amount: $2,032," a "Date of 1st Delinquency: 10/27/2022," and a "Date Closed: 11/26/2022." The fields "Date of Last Activity" and "Date Major Delinquency 1st Reported" display no value, even though Equifax simultaneously reports the date of first delinquency and a charge-off status, data that could not exist without underlying activity and reporting dates. The "24 Month History" table states two different last-payment dates for this single account, as alleged above. The row for 05/25 displays no value in the "Balance" and "Past Due Amount" columns while every adjacent 2025 row displays "$2,032" in both. The rows for 12/24, 08/24, and 03/24 display no "Balance" while displaying a "Past Due Amount" of "$2,032." The row for 01/24 displays no value for "Balance," "Past Due Amount," or "High Credit." Ten monthly rows are missing outright from within the displayed span: 02/25, 01/25, 11/24, 10/24, 09/24, 07/24, 06/24, 05/24, 04/24, and 02/24. Equifax states "Months Reviewed: 50" while displaying thirteen rows.

29. Central Research Inc, accounts ending 6569 and 6669. For each of these education loans, the "24 Month History" omits the September 2025 row (the table jumps from 10/25 to 08/25) and omits the June, May, and April 2024 rows (the table jumps from 07/24 to

03/24), states "Months Reviewed: 33" while displaying eighteen rows, and reports a header balance "as of" a "Date Reported: 11/30/2025" for which no November 2025 row appears.

30. Kikoff Lending, LLC, account ending N77R, and Lead Bank, account ending 9558. For each of these open, positive accounts, the header reports a December 2025 balance, a December 2025 date of last activity, and a December 15, 2025 date of last payment, yet the "24 Month History" table ends at November 2025 and displays no December row, as alleged above. Plaintiff's most recent month of on-time payment history on her credit-builder accounts is thus absent from her own file disclosure.

31. Ava Financial Inc, accounts ending 2BM6 and GM6H. For the account ending 2BM6, Equifax states "Months Reviewed: 14" while displaying three monthly rows. For the account ending GM6H, which was open during 2024 and closed "11/30/2024," well within the twenty-four months preceding the disclosure, Equifax states "Months Reviewed: 11" and "Actual Payment Amount: $60" while displaying no "24 Month History" table at all and no value for "Scheduled Payment Amount."

32. A § 1681g(a)(1) file disclosure must be both complete and accurate. The deficiencies alleged herein are omissions of information in Plaintiff's file, and the conflicting Bank of America last-payment dates and the blank-versus-populated balance cells are, in addition, affirmative inaccuracies on the face of the disclosure. Plaintiff is not required to plead an inaccuracy under 15 U.S.C. § 1681e(b) or § 1681i in order to state a claim under § 1681g(a)(1), which imposes a disclosure duty distinct from the statute's inaccurate-reporting provisions. Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BB (S.D. Fla. Dec. 29, 2025), Dkt. 24 (denying judgment on the pleadings; account numbers and original-creditor names are within the "file," and no inaccuracy element applies); Stafford v. Trans Union, LLC, No. 4:25-

cv-00921-JDK (E.D. Tex.), Report and Recommendation, Doc. 25 (Nov. 17, 2025), adopted, Doc. 30 (Feb. 25, 2026) (denying Equifax's motion to dismiss a § 1681g(a)(1) claim based on omitted tradeline and payment-history data).

33. The purpose of the § 1681g disclosure is to let consumers learn what is in their files so they can identify and correct errors before the information is disseminated. TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021). The deficiencies alleged herein defeat that purpose: knowing the original creditor is essential to understanding a debt's origin; complete monthly histories let a consumer check each month against her own records; and dates of activity and payment govern how long derogatory information may lawfully remain. The omissions directly impair Plaintiff's ability to verify the accounts on her file and to exercise her dispute rights under 15 U.S.C. § 1681i in an informed manner.

34. Nothing elsewhere in the disclosure, viewed in its entirety, supplies the omitted information or cures the deficiencies identified above; the omitted data appears nowhere in the document.

**E. The Deficiencies Form a Uniform, Systemic Pattern**

35. The deficiencies identified above are itemized, field by field and with verbatim quotations, in the inventory attached as Exhibit D. In total, the January 10, 2026 disclosure contains in excess of thirty distinct blank, missing, or internally conflicting data fields, spanning eight tradelines furnished by seven unrelated furnishers.

36. The same categories of information are missing across unrelated furnishers: current-month history rows missing beneath headers reporting current-month balances; months-reviewed counts exceeding months displayed; payment-amount and payment-date columns left blank; and activity and status fields left empty. Uniform omission categories across unrelated

furnishers do not happen by coincidence; they reflect how Equifax's disclosure-generation systems are designed and operated. Cf. Williams v. First Advantage LNS Screening Sols., Inc., 947 F.3d 735 (11th Cir. 2020).

37. On information and belief, the deficiencies result from automated disclosure templates and business rules Equifax uses to generate consumer file disclosures, which systematically exclude or truncate categories of file information; the resulting deficiencies have been known to Equifax for years and affect other consumers who request their files, not only Plaintiff.

**F. Willfulness**

38. On January 23, 2024, the Consumer Financial Protection Bureau published an Advisory Opinion on the file-disclosure obligation, 89 Fed. Reg. 4167 (Jan. 23, 2024) (Exhibit B), advising that upon a consumer's request a consumer reporting agency must disclose all information in the consumer's file, in a form the consumer can understand and use, including the sources of that information.

39. Plaintiff's disclosure was generated on January 10, 2026, nearly two years after that Advisory Opinion. After January 23, 2024, no reading of "file" that excludes furnished tradeline data, monthly payment history, or original-creditor identification remained objectively reasonable within the meaning of Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69-70 (2007). Whatever safe harbor an agency might once have claimed for a narrow construction evaporated in the face of authoritative guidance squarely addressing the pled statute.

40. The Federal Trade Commission gave the industry the same instruction more than twenty-five years ago in its Advisory Opinion to Darcy (June 30, 2000) (Exhibit C), explaining

that § 1681g requires disclosure of all information in the consumer's file at the time of the request.

41. Despite that long-standing and recently reiterated regulatory notice, Equifax generated and delivered a disclosure exhibiting the systemic pattern of omissions and contradictions alleged herein. Equifax's conduct was therefore willful within the meaning of 15 U.S.C. § 1681n, or at minimum reckless, which the FCRA treats as willful. Safeco, 551 U.S. at 57-58.

**G. Damages**

42. Equifax's deficient disclosure has deprived Plaintiff of information to which the statute entitles her and has inflicted concrete harm.

43. Informational injury. Plaintiff is unable to verify $3,590 in derogatory balances reported on her Equifax file: the "$510" LVNV Funding LLC balance, the "$2,032" Bank of America charge-off balance, the "$263" Credit Collections balance, and the "$785" ACS collection balance. She cannot verify the LVNV debt at all without knowing the original creditor, cannot reconcile the Bank of America account against two conflicting last-payment dates, and cannot check the missing months of history against her own records.

44. Impaired dispute rights. The omissions prevent Plaintiff from exercising her reinvestigation rights under 15 U.S.C. § 1681i in an informed manner. A consumer cannot frame a meaningful dispute about an account whose original creditor, activity dates, and monthly history her own file disclosure conceals.

45. The injury is aggravated by Plaintiff's circumstances, which the disclosure itself documents: she is actively rebuilding her credit through small credit-builder accounts, and the

disclosure omits even her most recent month of on-time payments on those accounts while presenting unverifiable derogatory data alongside them.

46. Time and resources. Plaintiff has expended substantial time and resources reviewing the eighteen-page disclosure, cross-referencing its internal contradictions, and preparing this action.

47. Plaintiff's injuries bear a close relationship to harms traditionally recognized at law, including the denial of information to which one is legally entitled where the denial produces adverse downstream consequences. Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092 (9th Cir. 2022).

48. Independently, because Equifax's violations were willful, the FCRA entitles Plaintiff to statutory damages without proof of actual damages, 15 U.S.C. § 1681n(a)(1)(A), and the willfulness allegations herein independently support Plaintiff's standing. Safeco, 551 U.S. at 54; Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 622 (7th Cir. 2007); Stafford, Doc. 30 at 3-4 (overruling Equifax's standing objection on this basis).

## COUNT I

## WILLFUL FAILURE TO MAKE A CLEAR AND ACCURATE FILE DISCLOSURE

### 15 U.S.C. § 1681g(a)(1), Enforced Through 15 U.S.C. § 1681n

49. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

50. Upon Plaintiff's request, 15 U.S.C. § 1681g(a)(1) required Equifax to clearly and accurately disclose all information in Plaintiff's file at the time of the request.

51. Equifax failed to comply. The January 10, 2026 disclosure omitted information in Plaintiff's file, including monthly account histories, payment amounts and dates, activity and

status data, and the identity of the original creditor on a debt-buyer collection account, and it disclosed other information inaccurately, including two conflicting dates of last payment for a single account, all as alleged above and itemized in Exhibit D.

52. Equifax's noncompliance was willful within the meaning of 15 U.S.C. § 1681n. Equifax acted in knowing or reckless disregard of its disclosure obligations, of which the CFPB's January 23, 2024 Advisory Opinion and the FTC's June 30, 2000 Darcy opinion gave it unmistakable notice, and its systemic, template-driven pattern of omissions across unrelated furnishers evidences a deliberate policy rather than isolated error.

53. Plaintiff is entitled to actual damages or statutory damages of not less than one hundred dollars and not more than one thousand dollars per violation under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and costs under 15 U.S.C. § 1681n(a)(3).

## COUNT II

## NEGLIGENT FAILURE TO MAKE A CLEAR AND ACCURATE FILE DISCLOSURE

### 15 U.S.C. § 1681g(a)(1), Enforced Through 15 U.S.C. § 1681o, in the Alternative

54. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

55. In the alternative, if Equifax's failure to comply with 15 U.S.C. § 1681g(a)(1) was not willful, it was negligent. Equifax failed to exercise the care required of a consumer reporting agency in generating and delivering Plaintiff's file disclosure.

56. As a direct and proximate result of Equifax's negligent noncompliance, Plaintiff sustained the actual damages alleged above, and she is entitled to recover those damages and costs under 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Susan Hassan respectfully requests that the Court enter judgment in her favor and against Defendant Equifax Information Services, LLC, and award the following relief:

(a) actual damages under 15 U.S.C. § 1681n(a)(1)(A) or, in the alternative, 15 U.S.C. § 1681o(a)(1);

(b) statutory damages of not less than one hundred dollars and not more than one thousand dollars for each willful violation, under 15 U.S.C. § 1681n(a)(1)(A);

(c) punitive damages under 15 U.S.C. § 1681n(a)(2);

(d) the costs of this action under 15 U.S.C. § 1681n(a)(3) or § 1681o(a)(2);

(e) an order directing Equifax to provide Plaintiff a complete, clear, and accurate disclosure of all information in her file as 15 U.S.C. § 1681g(a)(1) requires;

(f) leave to amend, which Plaintiff reserves the right to seek, to assert additional claims, including under 15 U.S.C. § 1681i, should further documentation or discovery support them; and

(g) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 8-18-26

Susan Hassan

Susan Hassan

Plaintiff, Pro Se
316 New Boston St. Unit 2423
Woburn, MA 01801
(781) 874-0643